## 10466

### SCHMID v. WHITTEN.

#### (103 S. E. 553.)

SPECIFIC PERFORMANCE—SPECULATIVE CONTRACT NOT ENFORCEABLE.—An option contract for purchase of land will not be specifically enforced where the object of the transaction on the part of the purchaser desiring enforcement was merely to speculate.

Before DeVore, J., Oconee, November term, 1919. Reversed.

Action by W. D. Schmid against Geo. B. Whitten for specific performance. From judgment for plaintiff, defendant appeals.

*Mr. E. L. Herndon,* for appellant, cites: *To be valid tender must be unconditional and must be of a definite and*

*certain character:* 1 N. & McC. 194; 15 Rich. 318; 116 Ga. 53; 115 Ga. 691; 103 Ga. 651; 7 Utah 519.    *And of sufficient amount:* 28 Ency. 17.    *Tender must be kept good:* 88 S. C. 533; 28 Enc. 41; 38 Cyc. 171.    *Words "good and sufficient titles" is not equivalent to title free of encumbrance with dower renounced:* Bail. Eq. 379; 1 Civ. Code 3454; 3 Watts & Serg. 653; 39 Am. Dec. 53.    *Where defects are known at time of contract, specific performance will not be decreed with deduction for defects:* Rich. Eq. Cas. 432; 15 S. C. 124, 127; 53 S. C. 573; 70 S. C. 357; 103 S. C. 254; 10 L. R. A. (N. S.) 119, and note; 38 L. R. A. (N. S.) 1199; 211 Mo. 671; 14 Ann. Cas. 652; 72 N. J. Eq. 316; 63 Or. 261; L. R. A. 1917f, 598; 6 Watts 87; 31 Am. Dec. 452; 3 Watts & Serg. 563; 39 Am. Dec. 53; 6 Rich. Eq. 324; 57 S. C. 131.    *Inchoate right of dower an encumbrance:* 69 S. C. 370; 77 S. C. 64.    *Omission in contract cannot be supplied by parol:* 69 S. C. 93; 79 S. C. 134. *Contrary to secs. 3736,3737, 1 Civ. Code.    Specific performance will not lie to force a vendor to convey his homestead; and no waiver will defeat the right except it be by deed or mortgage:* Const., art. III, sec. 28; 1 Civ. Code, secs. 3711, 3715; 20 S. C. 522; 25 S. C. 485; 45 S. C. 338; 51 S. C. 97; 109 S. C. 196; 23 Tex. 585; 76 Am. Dec. 79; 27 Tex. 450; 70 Tex. 572; 8 Am. St. Rep. 619; 65 Am. Dec. 481; 71 Am. Dec. 382; 75 Penn. 141; 15 Am. Rep. 587; 6 Tex. 102; 55 Am. Dec. 762.    *Question of homestead may be raised at any time:* 20 S. C. 522; 51 S. C. 97; 112 S. C. 400; 100 S. E. 156.

*Mr. M. C. Long,* for respondent, cites: *"Good and sufficient title" means a title free from encumbrances:* 20 Cyc. 1274; 70 S. C. 357; 27 S. C. Eq. 324; 39 Cyc. 1407; 84 S. C. 186.    *Tender was necessary:* 69 S. C. 371; 77 S. C. 64. *Proof of readiness to comply is sufficient:* 17 S. C. 334. *Parol evidence admissible to show separate agreement as to mortgage:* 72 S. C. 216; 90 S. C. 541.    *Debtor has right to*

*sell or mortgage homestead after it has been assigned to him:* 19 S. C. 242; 38 S. C. 102; 7 S. C. 19; 25 S. C. 448; 10 S. C. 40. *Claim as to homestead should have been raised by pleadings:* 82 S. C. 97; 70 S. C. 403; 82 S. C. 131; 20 S. C. 527; 21 S. C. 135. *Authorities from other States on homestead must be read in light of statutory provisions of such States:* 26 S. C. 17. *Homestead right effective as against creditors, but not against respondent:* 45 S. C. 343.

Statement of Facts. This is an action for specific performance of the following contract, entered into by the plaintiff and defendant, on the first day of December, 1917:

"State of South Carolina, County of Oconee. The following agreement witnesseth: That G. B. Whitten agrees to sell to W. D. Schmid, his farm of 24½ acres, more or less, situate near Walhalla, * * * for the sum of eleven hundred and fifty ($1,150) dollars, payable one-half in two years from date and the remainder in four years, with interest, payable annually, at eight per cent. per annum from date until paid in full. Should the said W. D. Schmid desire to pay the whole amount due at any time, the said G. B. Whitten agrees to accept the same, and to make good and sufficient titles to the land described above. Whenever the said W. D. Schmid pays the one-half due in two years and secures the remainder by mortgage of the premises, the said G. B. Whitten agrees to make to the said W. D. Schmid good and sufficient title to the property. Should W. D. Schmid fail to pay the interest at the expiration of each year, then the said G. B. Whitten reserves the right to take possession of the property without suit or process. * * * Witness our hands and seals this 1st day of December, 1917. G. B. Whitten. (L. S.) W. D. Schmid (L. S.). In the presence of V. F. Martin, R. H. Alexander."

The following facts are admitted:

"(1) That at the time the contract was entered into, the defendant, George B. Whitten, was a married man and the

head of a family, consisting of himself, his wife, Mrs. Lillie B. Whitten, and two small children. He owned no land other than the 24½ acres described in the agreement. At that time there was a mortgage on the tract of land by the defendant, George B. Whitten, to the defendant, the Union Central Life Insurance Company. That the plaintiff knew these facts at the time he entered into the contract; that the defendant, Whitten, is still such head of a family, owns no other lands, and is a resident of the State of South Carolina, and the mortgage is still unpaid.

"(2) About April 27, 1917, the plaintiff went into possession under a rent contract with the defendant, Whitten, and has remained in possession, either by himself or by those under him, since that time; the plaintiff has paid the interest due on December 1, 1918, which was all payments due under the terms of contract of purchase, at the date of the commencement of this action. Defendant, Whitten, has paid interest on mortgage twice since contract of purchase was entered into and before date of reference, said interest amounting to $64. Defendant never requested plaintiff to pay interest on said mortgage, claiming plaintiff had not declared his intention to take the land, and he paid it himself to keep down costs in self-defense. Defendant testified, on direct and cross-examination, that mortgage was discussed between him and the plaintiff before contract was entered into. Defendant testified that, at the time contract was drawn, that he told plaintiff that he (plaintiff) would have to pay the mortgage; that he and plaintiff agreed not to mention mortgage in contract and to keep same a secret.

"(3) That on or about the 1st day of February, 1919, the plaintiff tendered to the defendant, George B. Whitten, the sum of $750, and the accrued interest on that amount from the 1st day of December, 1918, to the date of the tender, as in full of the purchase price, plaintiff claiming a

deduction of the amount of the difference between that sum and the price mentioned in the agreement for the amount of the mortgage debt; but the defendant, G. B. Whitten, refused the amount of this tender as insufficient, claiming he was entitled to the full amount of the purchase price mentioned in the agreement, without any deduction for the amount of the mortgage debt. The defendant, G. B. Whitten, then tendered to the plaintiff a deed of conveyance to the premises, containing a clause of general warranty, but without renunciation of dower of Mrs. Whitten, and demanded payment in full of the balance of the purchase price, as set out in said agreement. The plaintiff refused to accept it, for the reason that the mortgage was upon the premises, and that the wife of the defendant, Whitten, had not renounced her dower.

"(4) On or about the 6th day of February, 1919, plaintiff made to the defendant, Whitten, a written tender of $1,165.75, subject to the provisions, that in case Mrs. Lillie Whitten still refused to renounce her dower rights the defendant, Whitten, agree to a deduction from the purchase price of such amount as might be ascertained by the Court, or agreed upon to be the full amount of such dower rights, and the retention by the plaintiff of such portion of the purchase money as might be necessary to indemnify him against the dower claim of his wife, Mrs. Lillie B. Whitten, so long as said claim continued to exist, as an incumbrance on the land. * * *"

The conclusions of the special referee are as follows:

"I hold that under the terms of the contract Schmid has the right to pay Whitten, on or before the 1st day of December, 1919, the sum of $575 and all interest due on the whole amount of the purchase price; that upon the payment of said amount Whitten must deliver to Schmid a deed of conveyance to the tract of land in question in due form; that out of the purchase price, Whitten must pay the mortgage to

the Union Central Life Insurance Company, or else deduct
it from the amount of the purchase price and permit Schmid
to take·the place subject to the mortgage; that upon the
delivery of the deed by Whitten to Schmid that Schmid
must execute and deliver to Whitten a mortgage over the
premises for the balance of the purchase money, in accord-
ance with the terms of the contract; that in the event the
wife of George B. Whitten refuses to renounce her dower
in the deed to said tract of land, said W. D. Schmid be
allowed to retain the sum of $191.66 (one-sixth of the pur-
chase price), and either give a mortgage over the said tract
of land to the said George B. Whitten for the sum of
$191.66, with interest at 8 per cent. per annum, payable
annually to the said George B. Whitten so long as the
inchoate right exists, and in the event the wife of the said
George B. Whitten outlives him, the said sum to be paid to
her, and in the event he should outlive her the said sum to
be paid to him. * * * "

The report of the special referee was confirmed in a
formal order.

June 28, 1920.

The opinion of the Court was delivered by MR. JUSTICE
WATTS.

I dissent to the opinion of the Chief Justice.* This
being an action for specific performance, it is within the
discretion of the Court whether it will decree it or not.
The facts in the case are not such as will appeal to a Court
of justice and good conscience that a decree should be made.
Either party could breach the contract or option for sale if
they saw proper to do so. I do not know of any law to
prevent any person breaking a contract. When they do so

*After it was written, the opinion of Mr. Chief Justice Gary was
treated as the dissenting opinion and the opinion of Mr. Justice Watts
became the majority opinion.

they must respond in damages in so doing, if the aggrieved party sustains any. In the present case, if appellant broke his contract the respondent could sue him. Any damages he recovered, the appellant's claim of homestead would be good against, as the contract entered into is simply to convey a tract of land. It is not an alienation by deed or mortgage, but simply a contract to convey under certain conditions. Of course, if the Court is determined to decree specific performance then he will not have his plea of homestead, as made in this case, sustained.

The respondent did not enter into the contract to purchase a home, but the only inference from the evidence is that he was on the make. The special referee finds that the respondent has optioned the land off the last part of 1919 to Morrison for $1,900. He in turn has contracted to sell to O. C. Lyles. Whitten contracted to sell Schmid December 1, 1917. Schmid went into possession then, not as purchaser, but as a tenant, having given a rent sum to Whitten. So now we have, according to the finding of the master, three persons other than Whitten having some claim in the land. And if we are confronted with the same trouble about dower that Whitten and Schmid are having, between Schmid and Morrison, and Morrison and Lyles, we will have a nice mix-up. It shows the danger of "shoe-string title," and it is rule of absurdity if a Court of equity intends to decree specific performance in such cases, and lend their aid and assistance to enforcing such barefaced gambling and speculative contracts. One of the curses of the country at present is the gambling speculative craze, whereby a lot are out for easy money and a desire for quick riches.

There are a lot of good people engaged in the real estate business, legitimately buying and selling, but the case at bar presents no such features. I do not intend by my aid and assistance to encourage such wildcat, speculative craze, and

bring about disaster. We had a case where the original purchase price was $10,000, and by subsequent "shoe-string sales" the last purchaser agreed to give $45,000. The collapse came, and under foreclosure proceedings the property brought a little over $10,000. All persons who have the good of their community at heart deplore the loose way that these transactions are conducted, and want them done away with. Practically, no earnest money passed between appellant and respondent. Respondent does not claim to have put any valuable improvement on the land. He never offered to comply until he saw a profit in it, by option, to another.

If decree of specific performance is to be enforced, the Chief Justice is right in holding that what was said by parties was merged in the contract, but, at the same time, if it was an independent agreement that respondent was to pay the mortgage, then appellant was justified in breaching the contract. I am opposed to specific performance. Let the respondent sue on the law side for damages if he has sustained any. I know of no law whereby a married woman is required to renounce her dower. For these reasons I think the decree appealed from should be reversed.

A majority of the Court concurring that the judgment should be reversed, it is reversed.

MR. JUSTICE GAGE concurs.

MR. JUSTICE FRASER. I concur. I do not think a Court of equity should decree specific performance of contracts that are merely speculative.

MR. CHIEF JUSTICE GARY, *dissenting*. The defendant appealed upon numerous exceptions, but it will not be necessary to consider them in detail. In the statement of the admitted facts, we find the following:

"Defendant testified that at the time the contract was drawn he told plaintiff that he (plaintiff) would have to

pay the mortgage; that he and plaintiff agreed not to mention mortgage in contract, and to keep same a secret."

This fact shows that the rights of the parties were to be determined in accordance with the written contract, and that, as the oral agreement was to be kept secret, it was not intended that it should be a part of the written agreement. It is provided in the contract that the defendant should make good and sufficient titles to the land. The meaning of these words is that the land should be free from incumbrances, which include mortgages and the inchoate right of dower. Therefore, the conclusions of his Honor, the Circuit Judge, are sustained in these respects.

The appellant further contends that the contract for the sale of the land was null and void by reason of the fact that it constitutes his homestead. It is doubtful whether such question is properly before the Court for consideration; but, waiving such question, the contention of the appellant cannot be sustained. Section 28, art. II, of the Constitution provides "that no waiver shall defeat the right of homestead before assignment, except it be by deed of conveyance, or by mortgage;" also "that after a homestead in lands has been set off and recorded the same shall not be waived by deed or conveyance, mortgage or otherwise, unless the same be executed both by husband and wife, if both be living." The homestead, however, had not been set off. The power of the head of the family to make a deed of conveyance includes the power to make a contract for the sale of the land, as the ultimate result contemplated is a deed of conveyance. For these reasons I dissent.

MR. JUSTICE HYDRICK concurs.