James Melvin **LUCAS**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 18636.

United States Court of Appeals
Ninth Circuit.

Dec. 10, 1963.

———◆———

Mesa Lundberg, Hollywood, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Criminal Section, Norman T. Ollestad, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before MERRILL and KOELSCH, Circuit Judges, and BOWEN, District Judge.

KOELSCH, Circuit Judge.

The defendant, James Melvin Lucas, appeals from a judgment of the district court convicting him of escaping from the Federal Correctional Institution at Lompoc, California, in violation of the Federal Escape Act [18 U.S.C.A. § 751].[1] He urges two grounds for reversal:

█ First, the insufficiency of evidence to support the finding that his departure from custody was wilful, and second that he was denied due process of law because of the bias and prejudice of the trial judge who sat as the finder of fact.[2]

1. So far as pertinent Section 751 provides as follows:

"Whoever escapes * * * from any institution in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of· the United States by any court * * * shall * * * be fined * * * or imprisoned * * *."

2. The defendant formally admitted during the trial that at the time of his alleged escape he was confined at the Correctional Institution by direction of the U. S. Attorney General, pursuant to and following his conviction in the United States District Court for the District of Arizona, of a violation of the Dyer Act. (18 U.S.C.A. § 2312.) As an aside, counsel for defendant stated in brief that,

Defendant is not entitled to have this court review the record to determine whether the evidence was insufficient in the particular claimed. He did move for an acquittal at the close of the government's case, but when that motion was denied he introduced evidence in his own behalf, thus waiving any error in that ruling. Maulding v. United States, 257 F.2d 56 (9th Cir. 1953); Anderson v. United States, 253 F.2d 419 (9th Cir. 1952); Powell v. United States, 35 F.2d 941 (9th Cir. 1930). And since he did not renew the motion at the conclusion of all the evidence, he failed to secure a ruling that he could challenge on appeal. Ege v. United States, 242 F.2d 879 (9th Cir. 1957); Hardwicke v. United States, 296 F.2d 24 (9th Cir. 1961).[3] "It is true that an appellate court may in its discretion notice errors in a trial of a criminal case not properly raised at the trial, when a refusal to do so would shock its judicial conscience and operate as a palpable miscarriage of justice (cases omitted); but this is a power rarely exercised, and never except for the purpose of preventing a judicial wrong." Bilboa v. United States, 287 F. 125 (9th Cir.

1923). There is nothing in the record which would require this court to exercise its inherent power, expressly recognized by Rule 52(b), supra, n. 3. We can make this observation with complete assurance because due consideration of defendant's second point has necessitated recourse to various portions of the trial transcript. Several of those passages contain evidence from which the trier of fact might have validly rested the finding of defendant's guilt beyond a reasonable doubt.

When the case was called the trial judge allowed defendant to read a written statement that he (the defendant) had previously prepared. Immediately afterward defendant waived a jury and the trial commenced. The testimony given by the defendant was to the effect that he and two other inmates of the Institution had surreptitiously brewed an alcoholic concoction known as "raisin jack"; that on the day of the alleged escape the three of them were members of a group who were working outside the walls of the institution under the supervision of a guard; that during the noon

---

sometime following the defendant's conviction in the instant case, the Arizona District Court had vacated its sentence, set aside the judgment and ordered the case tried; on oral argument we were further advised that thereafter the court had dismissed the action. In the court below, defendant did not question the validity of the judgment of conviction under which he was held; and indeed he would have gained nothing by such an attempt for "A prisoner in a penal institution whose sentence is irregular or voidable may not for that reason, and before some court has so adjudged, defy his guards and run away. * * * The statute * * * forbids escape, not only to those 'properly in the custody of the Attorney General' but also to all 'who are confined in any penal or correctional institution, pursuant to his direction,' without mention of the propriety of the confinement. We are of opinion that attempts at escape from such institutions are * * * forbidden to all inmates, and that, if they consider their confinement improper, they are bound to take other means to test the question." Bayless v. United States, 141 F.2d 578, 579

(9th Cir. 1944), cert. denied, 322 U.S. 748, 64 S.Ct. 1147, 88 L.Ed. 1580, quoting with approval from Aderhold v. Soileau, 67 F.2d 259, 260 (5th Cir. 1933). See also Mullican v. United States, 252 F.2d 398 (5th Cir. 1958), 70 A.L.R.2d 1217; Godwin v. United States, 185 F.2d 411 (8th Cir. 1950).

3. Defendant invokes Rule 52(b) Fed.Rules Crim.Proc., the so-called "plain error" rule to avoid the effect of his failure to tender the issue in the trial court saying, "Even without a proper motion at the close of all the testimony the Circuit Court of Appeals is compelled to examine the point under Rule 52(b)." Defendant is mistaken. United States v. Renee Ice Cream Co., 160 F.2d 353 (3d Cir. 1947) on which defendant relies does not so hold. It clearly appears from the opinion that the Third Circuit was merely stating in the course of pointing out the grossness and patentcy of the trial court's error that even if no motion had been made (and in fact one was) the reviewing court would have been "compelled to examine the point under Rule 52(b)."

meal period they drank a considerable quantity of this liquor and, in addition, he also chewed a piece of root of the Jimson weed, a noxious plant, all of which rendered him so intoxicated and narcotized that he was unaware that he ran away from the guard later in the afternoon.[4]

This evidence, tending as it did to show a lack of intent to flee from custody, was at considerable variance from his prepared statement, which in substance was that his motive for leaving the Institution was a fervent desire to return to the district court and explain his innocence to the judge, in the hope that the latter would annul an unjust and illegal sentence. This written statement was neither introduced nor offered in evidence. The defendant seeks to demonstrate from colloquies between court and counsel during the latter's argument following the conclusion of evidence and from statements made in response by the judge in the course of his oral summation "that the trial court was unable to erase the memory of appellant's statement from its mind." On that premise the appellant argues that "Having a firm belief, at the close of the reading of the statement, that appellant knew what he was doing when he left Lompoc, the court listened to the defense, as required by law, but did not weigh the evidence presented in court. Instead the court 'found' the fact in accordance with its previously acquired belief that appellant's defense was, if not a sham, not at all adequate."

The government points to the fact that defendant did not seek to disqualify the judge on the grounds of his bias or prejudice by filing a timely affidavit "as required" by the provisions of 28 U.S. C.A. § 144.[5] As we understand it, its argument is that this statute provides the exclusive method of raising the issue.

■ The proposition is well settled and this court has often held that "To disqualify the judge, timely objection should * * * been made; if not so made, it is waived." Kramer v. United States, 166 F.2d 515, 518 (9th Cir. 1948); see also Chessman v. Teets, 239 F.2d 205 (9th Cir. 1956) rev'd on other grounds, 345 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253 (1956); Taylor v. United States, 179 F.2d 640 (9th Cir. 1950). However, the Sixth Circuit, in Knapp v. Kinsey, 235 F.2d 129, 131 (6th Cir. 1956) declared that "* * * Section 144, Title 28 U.S.Code was not applicable to (a) case in which the claimed bias or prejudice was first disclosed during the trial. Under the circumstances the remedy can not be by a change of judges during the trial; it necessarily becomes a matter of alleged prejudicial error and for correction by the Court of Appeals." And this court, recognizing that "One of the fundamental rights of a litigant under our judicial system is that he is entitled to a fair trial in a fair tribunal, and that fairness requires an absence of actual bias or prejudice in the trial of the case" [Knapp v. Kinsey, 232 F.2d 458, 465 (6th Cir. 1956)] has considered the question ["q]uite apart from the

4. The three left together; they were apprehended at some distance during the evening of the following day. After running from the grounds of the Institution they discovered nearby an unattended truck; since there was no ignition key in it, they "hot wired" the engine and drove away. All were indicted together; defendant's two companions both plead guilty.

5. Section 144. Bias or prejudice of judge. "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has

a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

"The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith."

efficacy of the affidavit of prejudice * * *." Chessman v. Teets, supra, 239 F.2d at 215; see also Taylor v. United States, supra.

█ But turning to the record we are unable to find anything that would tend in the slightest degree to support the very serious accusation appellant makes against the trial judge. We do not set out the remarks, because to do so would simply serve to unduly lengthen this opinion and add nothing. In substance, what appears is that during the course of defendant's argument, the court several times interrupted, in order to express disagreement with counsel's version of the evidence and to call attention to discrepancies in testimony of the witnesses (particularly the defendant's) and to point out areas where this evidence was in conflict. In addition, the court asked counsel's views concerning permissible inferences. Then, following the arguments, the court purported to quote certain of the testimony given by the defendant himself as supporting the finding of guilt.

All the questions and observations, as well as the inquiries, were entirely pertinent to the case and, while the practice might have been improper had there been a jury, here, as already noted, the trial judge, by virtue of plaintiff's waiver, was constituted and acting as the trier of fact. Nor do we perceive in the court's appraisal of the evidence the slightest suggestion of a dogmatic or warped view, inflexibly or otherwise conditioned by the gratuitous statement the defendant offered. Counsel weaves an ingenious argument and, by comparing portions of the evidence with what the court said, makes it appear that the finding of guilt was without a valid basis; it is then urged that the defendant's statement would supply this deficiency and therefore the court went outside the record in reaching its conclusion. The principal vice of the argument lies in what it ignores. A broader look at the record reveals both conflicts in testimony and the presence of facts which would permit varying factual conclusions. And

the record that appears is that the finder of fact resolved many of the conflicts in evidence adversely to the defendant and chose inferences other than those that were favorable. Naturally, the defendant is aggrieved by the sentence imposed upon him, but he has shown no valid legal reason why the judgment should be reversed. Accordingly the judgment is affirmed.